UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

STEPHANIE W.,

                                        Plaintiff,

v.                                                                      6:25-CV-00051
                                                                            (AJB/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                          OF COUNSEL:


HILLER COMERFORD                              JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW               IDA COMERFORD, ESQ.
  *Attorneys for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226


U.S. SOCIAL SECURITY ADMIN.             VERNON NORWOOD, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff Stephanie W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1.)  This matter was referred to me for Report and Recommendation by the Honorable Anthony J. Brindisi, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 3, 4.)  This case has

proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 11, 12.)  For the reasons set forth below, this Court recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.     PROCEDURAL HISTORY

On March 29, 2019, Plaintiff protectively filed her applications for DIB and SSI, each alleging disability dating from November 15, 2016. (Administrative Transcript ("T.") 440-453.) Her applications were denied initially on August 1, 2019, and her request for a hearing was granted. (T. 88-134, 212-231.)  On June 26, 2020, Plaintiff testified by telephone before Administrative Law Judge ("ALJ") Robyn L. Hoffman. (T. 37-56.)  ALJ Hoffman issued an unfavorable decision on August 13, 2020.[1] (T. 135-156.)  On December 15, 2020, the Appeals Council granted Plaintiff's request for review, vacated the August 13, 2020 decision and remanded the matter for further consideration of the medical opinion evidence, particularly the March 11, 2020 medical source statement of Dr. Daniel Mendez, Plaintiff's pain specialist. (T. 157-163.)

Following the Appeals Council's remand order, ALJ Hoffman held a telephonic hearing on March 25, 2021 to hear additional testimony from Plaintiff. (T. 57-64.)  To further develop the record, ALJ Hoffman submitted written interrogatories to Dr. Nikerson Geneve, an

---

[1] This Court notes that the first two pages of ALJ's Hoffman's August 13, 2020 decision are transposed in the administrative record. (T. 138-139.)

independent medical expert, who provided a response dated April 9, 2021. (T. 1102-1118.)  ALJ Hoffman also granted Plaintiff's request for a supplemental hearing and heard testimony from Dr. Geneve and Vocational Expert ("VE") Mary Vasishth. (T. 65-87.)  ALJ Hoffman issued a second unfavorable decision on June 2, 2022. (T. 10-36.)

The Appeals Council denied Plaintiff's request for review on March 31, 2023, and Plaintiff filed a complaint in the Northern District of New York on May 23, 2023 challenging the Commissioner's final decision. (T. 1297-1303.)  While that litigation was pending, the parties agreed to a stipulation remanding Plaintiff's disability claim, and the Honorable Anne M. Nardacci, United States District Court Judge, ordered remand to the Appeals Council on February 21, 2024. (T. 1344-1350.)  On March 1, 2024, the Appeals Council remanded Plaintiff's disability claim to a new ALJ, Bruce S. Fein. (T. 1351-1358.)

ALJ Fein[2] held a telephonic hearing on September 12, 2024 to hear testimony from Dr. Steven Winters, an independent medical expert, and VE Peter A. Manzi. (T. 1257-1269.)  ALJ Fein issued an unfavorable decision on September 25, 2024. (T. 1230-1256.)  Plaintiff bypassed written exceptions and the Appeals Council did not assume jurisdiction within sixty days, making the ALJ's determination the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1484(c),(d).  Plaintiff filed the present complaint in the Northern District of New York on January 8, 2025. (Dkt. No. 1.)

---

[2] Given the lengthy procedural history and the need for narrative clarity, this Court will frequently identify ALJ Hoffman and ALJ Fein by name.  When this Court uses the term "the ALJ," it will only be referring to ALJ Fein, whose September 25, 2024 disability determination is the subject of this proceeding.

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.      Standard for Benefits[3]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

---

[3] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;  (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.    FACTS

Plaintiff was 34 years old on the date she applied for benefits and 42 years old as of the date of the ALJ's decision at issue in this case. (T. 41, 440.)  She resides with her boyfriend and four children. (T. 49, 441, 680, 686, 1525, 1702-1703.)  She is a high school graduate who subsequently obtained an associate's degree. (T. 43, 680.)  Her work history includes positions as a retail assistant manager, assembler at a manufacturing facility, and packager for a shipping company.  (T. 43-46, 518-525, 1533-1540.)  She stopped working in November 2016 when she developed chronic hip pain. (T. 46-47, 685.)

Plaintiff describes a sharp stabbing pain in her hips that fluctuates in intensity but is always there. (T. 685.)  At the direction of her physicians, she began physical therapy, but soon

developed a sharp and stabbing back pain radiating down her legs that worsened with physical activity. (T. 685, 1689, 1702, 1716.)  Plaintiff reported minimal long-term improvement in her symptoms despite a prescribed treatment regimen that included multiple rounds of physical therapy, radiofrequency ablation,[4] and epidural injections. (T. 47-49, 62, 1119-1120, 1131, 1147, 1958-1959, 1961, 1972, 2041.)  Plaintiff testified that her constant pain made it difficult to sit, stand, or walk for prolonged periods and required frequent changes of positions to alleviate the pain. (T. 47, 50-52, 685, 1702.)

The record includes Plaintiff's relevant medical history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through September 30, 2018. (T. 1235.)  Based upon his review of the administrative record, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of November 15, 2016. (T. 1236.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "left hip trochanteric bursitis, [5] chondromalacia[6] of the knees, lumbar degenerative disc disease and herniated discs with radiculopathy, and myalgia." (T.

---

[4] Radiofrequency ablation uses radio waves to heat and destroy a small area of nerve tissue, stopping it from sending pain signals to the brain. https://my.clevelandclinic.org/ health/treatments/17411-radiofrequency-ablation [https://perma.cc/DHY8-XLBP].

[5] Trochantric bursitis is irritation or swelling of small fluid-filled sacs that cushion the spaces around the femur and hip joint. https://my.clevelandclinic.org/health/diseases/4964-trochanteric-bursitis [https://perma.cc/5J4K-B6TG]

[6] Chondromalacia is a softening of the cartilage behind the knee that can cause chronic pain, weakness, and stiffness.  https://www.health.harvard.edu/a_to_z/chondromalacia-patella

1236-1237.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), and Listing 1.18 (Abnormality of a major joint in any extremity). (T. 1237.)  Next, the ALJ found that Plaintiff could perform less than the full range of sedentary work. (T. 1237-1244.)  Specifically, the ALJ found that Plaintiff:

> can lift and/or carry 10 pounds occasionally and frequently; can sit for 6 hours in an 8 hour workday however would have to have an allowance to alternate sitting or standing positions at 30 minute intervals through the day; can stand/walk for a total of 2 hours in an 8 hour workday with the allowance to be allowed to return to a seated position at 30 minute intervals throughout the day when standing or walking; can occasionally balance, climb ramps/stairs, and stoop; should not climb ropes/ladders/scaffolds, crawl, kneel, or crouch; can frequently operate right foot controls; can occasionally operate left foot controls; should have no exposure to unprotected heights; and can occasionally tolerate exposure to extreme heat, cold, humidity, operational control of moving machinery, and hazardous machinery.

(T. 1237-1238.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 1238.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. (*Id*.)  The ALJ also considered Plaintiff's

---

[https://perma.cc/WHN3-EXV6].

subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence of record . . ." (T. 1239.)

At step four, the ALJ found that Plaintiff had no past relevant work. (T. 1244.)  Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 1244-1245.)  Accordingly, the ALJ found that Plaintiff has not been disabled from her alleged onset date of November 15, 2016 through the date of the ALJ's decision. (T. 1245.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence, particularly the March 11, 2020 opinion from Dr. Daniel Mendez, a pain specialist who had treated Plaintiff since February 2017. (Dkt. No. 10 at 15-23.)  The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 11 at 9-20.)

For the following reasons, this Court agrees with Plaintiff that the ALJ's disability determination was not supported by substantial evidence and recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand for further administrative proceedings.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at \*2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at \*2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at \*12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at \*8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588); *LaPorta*, 737 F. Supp. at 183; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at \*11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at \*7).

10

####        2.        **Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[7] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the

---

[7] Plaintiff's applications were protectively filed on March 29, 2019. (T. 440-453.)  Thus, the new regulations apply in this case.

11

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.      Summary of Relevant Medical Opinion Evidence

The lengthy administrative record includes written or testimonial opinions from a number of medical or mental health professionals, including two treating sources, two physical consultative examiners, two psychiatric examiners, along with five non-examining state agency consultants and two independent medical experts who each reviewed Plaintiff's then-current medical records. (T. 69-76, 93-97, 106-107, 120-122, 130-132, 680-683, 685-691, 812-829, 1103-1118, 1242-1244, 1261-1265, 1702-1707.)  Plaintiff's challenge to the ALJ's evaluation of the medical evidence focuses on three of those opinions: the February 27, 2020 Medical Source Statement from Nurse Practitioner ("NP") Jonathan Mizgala, one of Plaintiff's primary care

12

providers; the March 11, 2020 Medical Source Statement prepared by Plaintiff's pain specialist,

Dr. Daniel Mendez; and the September 12, 2024 hearing testimony of independent medical

expert Dr. Steven Winters. (Dkt. No. 10 at 17-23.)  Therefore, this Court will summarize those

three opinions below in chronological order.

### 1.    NP Jonathan Mizgala

NP Mizgala is affiliated with a medical practice where Plaintiff has been a patient since

at least April 2015, and has had a direct treatment relationship with Plaintiff since at least March

2019, when he began seeing Plaintiff approximately every three to four months for chronic pain

and adjustment disorder. (T. 710-712, 805-806, 960.)  On February 7, 2020, NP Mizgala

prepared a Medical Source Statement opining on Plaintiff's physical functional limitations. (T.

960-962.)  He assigned Plaintiff a "fair" prognosis and opined that she was capable of low stress

jobs. (T. 960.)

NP Mizgala opined that Plaintiff was capable of walking half of a city of block before

needing to rest or experiencing severe pain. (*Id.*)  In his opinion, Plaintiff could sit for about

fifteen minutes at one time, and less than two hours total over the course of the workday; only

stand for approximately fifteen minutes at one time, for a total of less than two hours over the

course of the workday; require permission to shift positions at will from sitting, standing, and

walking and to elevate her legs as needed . (T. 960-961.)

NP Mizgala also opined that Plaintiff would require unscheduled breaks on an hourly

basis, that would average 30-45 minutes each. (T. 961.)  He opined that Plaintfif could rarely lift

up to ten pounds and never lift any greater weight. (*Id.*)  He further opined that Plaintiff could

rarely move her head up, down, left or right; twist her body; stoop; crouch; climb ladders or

stairs; use her fingers or hands for grasping, twisting, or turning objects and other fine manipulation; or use her arms to reach in any direction. (T. 961-962.)

In NP Mizgala's opinion, Plaintiff was likely to have "good days" and "bad days" due to her physical impairments and thus was likely to miss more than four days of work per month. (T. 962.)  Finally, he opined that Plaintiff's pain and other symptoms would frequently interfere with her ability to maintain attention and concentration for even simple work tasks. (*Id*.)

The ALJ found NP Mizgala's opinion to be "partially persuasive", noting that Mizgala's "general conclusion that [Plaintiff] can perform less than sedentary work is generally supported and consistent with the overall record." (T. 1244.)  However, the ALJ also found

> Nurse Mizgala's specific findings regarding [Plaintiff's] functional abilities are less well supported and are less consistent with the totality of the record.  For example, [Plaintiff's] treatment records do not support and are inconsistent with Nurse Mizgala's finding that [Plaintiff] can stand, walk, and sit for less than two hours each, rarely engage in manipulative tasks, and that [Plaintiff's] symptoms frequently interfere with [Plaintiff's] attention and concentration.  The finding that [Plaintiff] would miss more than four days of work per month is speculative and inconsistent with [Plaintiff's] clinical findings as well [as] the frequency and intensity of [Plaintiff's] treatment.  I note that Nurse Mizgala's opinion is also inconsistent with the other above discussed opinions, including the opinion of Dr. Winters.

(T. 1244.)

### 2.  Dr. Daniel Mendez

Dr. Daniel Mendez treated Plaintiff's lower back and hip pain since February 2017, and prepared a Medical Source Statement describing her physical functional limitations on March 11, 2020. (T. 1016-1018.)  He gave Plaintiff an overall "good" prognosis and considered her capable of performing low stress jobs. (T. 1016.)  In his opinion, Plaintiff was able to walk approximately ten city blocks before needing to rest or experiencing severe pain, could sit for about one hour at one time, and stand for about thirty minutes at one time. (*Id*.)  He also opined

that Plaintiff would require a job that allowed her to shift positions at will from sitting, standing, or walking. (*Id.*) Dr. Mendez did not opine on the total length of time Plaintiff was able to sit, stand, or walk over the course of a typical workday. (*Id.*)

Completing a check-box form, Dr. Mendez opined that Plaintiff could frequently lift up to ten pounds and occasionally lift up to twenty pounds. (T. 1017.)  He also opined that Plaintiff could frequently move her neck to look up and down, turn her head left and right, and was able to frequently hold her head in a static position. (*Id.*)  He further opined that Plaintiff could occasionally twist, stoop, crouch, and climb ladders or stairs. (*Id.*)  Dr. Mendez also opined that Plaintiff was able to frequently use her hands to grasp, turn, and twist objects, to perform fine manipulation with her fingers, and use her arms to reach, including overhead reaching. (T. 1017-1018.)  In his opinion, Plaintiff's physical impairments were likely to produce "good days" and "bad days," make Plaintiff likely to miss work about three days per month, and occasionally interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*)

The ALJ deemed Dr. Mendez's opinion to be "partially persuasive." (T. 1243.) Specifically, the ALJ found:

> Dr. Mendez's general conclusion that [Plaintiff] has more than minimal limitations along with his finding that [Plaintiff] can stand for thirty minutes at a time is supported by and consistent with the overall record including Dr. Mendez's treatment notes.  However, Dr. Mendez's specific findings regarding [Plaintiff's] other exertional and non-exertional limitations are less consistent with the overall record.  For example, Dr. Mendez's finding that [Plaintiff] can lift up to twenty pounds and occasionally perform postural tasks appears to overestimate [Plaintiff's] abilities considering her diagnostic testing and ongoing treatment for pain associated with her orthopedic impairments.  The finding that [Plaintiff] would have occasional attention and concentration deficits and would miss about three days of work per month is inconsistent with [Plaintiff's] mental status examinations, the frequency and intensity of [Plaintiff's] treatment, and the testimony of Dr. Winters.

(T. 1243-1244.)

### 3. Dr. Steven Winters

Dr. Steven Winters, an independent medical expert who reviewed Plaintiff's then-current medical record, was called to offer testimony at the September 12, 2024 hearing regarding his opinion of Plaintiff's physical impairments and resulting functional limitations. (T. 1261-1265.) Citing imaging reports, Dr. Winters diagnosed Plaintiff with lower back pain due to degenerative joint and disc disease and disc herniation in the lower part of the lumbar spine. (T. 1262.) He also attributed Plaintiff's chronic hip pain to degenerative changes in the labrum and within the left hip joint, and her chronic knee pain to chondromalacia of the knees. (*Id.*)

In Dr. Winters' opinion, Plaintiff did not meet or medically equal any listed impairment. (T. 1262.) Regarding functional limitations, Dr. Winters opined that Plaintiff could lift and carry up to ten pounds frequently and up to twenty pounds occasionally. (T. 1263.) He also opined that Plaintiff could sit for up two hours at one time, and up to a total of six hours over the course of a workday. (*Id.*) He further opined that Plaintiff could walk or stand up to thirty minutes at one time, for a total of up to two hours over the course of the workday. (*Id.*) Dr. Winters opined that Plaintiff can occasionally climb stairs, stoop, work in extreme temperatures or around workplace hazards, and drive a motor vehicle. (*Id.*) Finally, he opined that Plaintiff can never crawl, kneel, or squat. (*Id.*)

In response to questioning from Plaintiff's non-attorney representative, Dr. Winters agreed that Plaintiff was likely to experience pain that would affect her ability to maintain attention and concentration but did not expect that Plaintiff would miss work due to her pain and other symptoms. (T. 1264.)

The ALJ identified several reasons for finding Dr. Winters' opinion to be "partially persuasive." (T. 1242.) Specifically, the ALJ explained:

Dr. Winters has specialized experience in the field of orthopedics and has an understanding of our disability program's policies and evidentiary requirements. He has supported his opinion with a detailed review of [Plaintiff's] updated medical and other evidence.  His opinion is generally consistent with the overall record including, [Plaintiff's] objective medical evidence discussed above. However, the overall record, including [Plaintiff's] ongoing treatment for chronic orthopedic pain, does suggest that [Plaintiff] has slightly greater limitations in regard to lifting, carrying, and balancing than those outlined by Dr. Winters and would also need an allowance to alternate standing/walking/sitting positions throughout the day due to her pain.

(*Id*.)

###     C.     The ALJ Failed to Adequately Consider the Supportability and Consistency of Dr. Mendez's Opinion.

"At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021).  An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record").  However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision.  *Loucks*, 2022 WL 2189293, at *2.  As the *Loucks* decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96).

Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.  *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102 (FPG), 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

Plaintiff contends that the ALJ failed to adequately explain his analysis of the supportability and consistency factors when considering Dr. Mendez's opinion.  This Court agrees and thus recommends remand for further evaluation of the medical opinion evidence.

To begin with, although the ALJ summarized the substance of Dr. Mendez's opinion, he provided minimal explanation beyond certain of the pain specialist's findings being "supported by and consistent with the overall record including Dr. Mendez's treatment notes," and others being "less consistent with the overall record." (T. 1243-1244.)  These general references to the overall record and/or a treating source's examination notes are insufficient.  *See Phillip B.*, 2024 WL 5454787 at *4 (recommending remand where ALJ simply found that nurse practitioner's opinion was not supported by their own treatment notes, without explaining discrepancy)*; see also Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) (remanding where "[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true.").

An ALJ's supportability analysis should include "an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion."  *Philip B. v. Comm'r of Soc. Sec.*, No. 6:23-CV-1455 (BKS/DJS), 2024 WL 5454787, at *4 (N.D.N.Y. Oct. 24, 2024), *rep't and rec. adopted*, 2025 WL 540372 (N.D.N.Y. Feb. 19,

2025) (quoting *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022)).  This Court's

searching review of the record provides no clarification of the supportability factor.  Instead, it

reveals administrative concerns about the lack of depth of analysis into the supportability of Dr.

Mendez's opinion.

After the parties stipulated to judicial remand, the Appeals Council issued a March 1,

2024 order criticizing ALJ Hoffman's evaluation of Dr. Mendez's opinion, and included a

lengthy narrative directing ALJ Fein to provide more detail regarding supportability:

> Also problematic is the decision's evaluation of the medical source opinion from
> Daniel Mendez, M.D., who provided pain management treatment for the claimant
> [citation omitted].  Dr. Mendez opined, among other things, that the claimant
> could sit for one hour at a time, required the ability to change positions from
> sitting, standing, or walking and would require unscheduled breaks during the
> workday, would miss about three days per month and had symptoms that would
> occasionally interfere with attention and concentration for even simple tasks
> [citation omitted].  **The decision finds that Dr. Mendez's opinion is not well
> supported "on its face" by substantial evidence but does not appear to
> consider Dr. Mendez's opinion in light of his treatment notes and medical
> findings** [citing T. 1284] . . . To the extent the decision's single citation to almost
> all of the medical evidence in the record included some of Dr. Mendez's
> evidence, the decision does not explain how his objective examination findings
> fail to provide support for his opined limitations [citing T. 1284].  Of note,
> clinical findings within Dr. Mendez's treatment records showed: positive trigger
> points in the left gluteal muscles [citing T. 637, 641, 677, 870, 1002, 1007, 1029);
> positive trigger points in the left piriformis[8] [citing T. 645, 677, 870, 1002, 1007];
> tenderness over L4/L5 or L4 spinous process [citing T. 645, 870, 1002, 1007,
> 1014]; tenderness over left paraspinals [citing T. 637, 641, 1014]; tenderness over
> piriformis, left sacroiliac, and gluteus [citing T. 677, 870, 1002, 1007]; decreased
> lumbar flexion, extension, and bilateral side bend [citing T. 637, 641, 645, 653,
> 657, 663, 667, 673, 677, 870, 1002, 1007, 1014];  tender trochanteric bursa
> bilaterally or on the left  (citing T. 645, 653, 657, 663, 667, 677, 870, 1002, 1007,
> 1014];  positive straight leg raise bilaterally [citing T. 637, 645]; positive

---

[8] The piriformis muscle is a flat, band-like muscle located in the buttocks near the top of
the hip joint, positioned in very close association with the sciatic nerve.  It stabilizes the hip area
and is critical to lower body movement. https://osteopathic.org/2017/08/30/piriformis-syndrome-
a-frequently-misdiagnosed-pain-in-the-buttocks/ [https://perma.cc/JG59-XNFY]

Gaenslen's test[9] [citing T. 870, 1002, 1007]; pain with palpation of the left anterior hip (citing T. 667, 673, 677, 870, 1002, 1007, 1014]; ambulating with slightly dissymmetric gait [citing T. 673]; positive sacral thrust [citing T. 677, 1014]; left lower extremity sensory testing diffusely decreased in L4/5 dermatome[10] or left posterior thigh [citing T. 1014, 1029]; and positive slump test [citing T. 1029]. Dr. Mendez also performed EMG testing which revealed electrodiagnostic evidence suggesting a left lumbar radiculopathy affecting the L5 and 51 nerve roots [citing T. 1003]. **As the decision does not assess the supportability of Dr. Mendez's opinion in light of this medical evidence, further consideration is necessary.**

(T. 1354-1355) (emphasis supplied).

This Court includes this recitation of the Appeals Council's directive not because it settles the question of the persuasiveness of Dr. Mendez's opinion or resolves the ultimate disability determination, but because it highlights the paucity of the ALJ's analysis of Dr. Mendez's treatment notes and the resulting impediment to judicial assessment of the ALJ's conclusion regarding supportability.[11] Plaintiff's brief identifies similar findings in more recent treatment notes from Dr. Mendez. (T. 1980-1982, 2000-2001, 2009-2010, 2061-2062.) These

---

[9] In the Gaenslen test, pressure is applied to the leg and hip while a patient is lying down to assess whether abnormalities or inflammation of the lumbar vertebrae and Sacroliac joint are the primary cause of pain. https://www.physio-pedia.com/index.php?title=Gaenslen_Test&oldid=290056 [https://perma.cc/T2YS-FKMM]

[10] A dermatome is an area of the body that relies on a specific spinal nerve. The L4/L5 dermatome is located at the kneecap and front of the lower leg, the inner sides of calf muscles, and the inner front surface of the feet. https://my.clevelandclinic.org/health/body/24379-dermatomes [https://perma.cc/FYH9-S9EB]

[11] This Court recognizes that the ALJ's apparent failure to comply with the Appeals Council's March 1, 2024 remand order may constitute its own grounds for remand. *See Annemarie P. v. Dudek*, No. 3:23-CV-1415 (MJK), 2025 WL 814772, at *4 (N.D.N.Y. Mar. 13, 2025) ("an ALJ's failure to comply with the Appeals Council's order constitutes legal error and necessitates a remand") (collecting cases). However, Plaintiff has not asserted this argument, so this Court has based its recommendation on the ALJ's assessment of the supportability and consistency arguments. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (deeming plaintiff seeking Social Security benefits to have waived argument not presented to district court).

too were excluded from the ALJ's supportability analysis.  Having found no evidence in the record that would clarify the ALJ's supportability analysis, this Court recommends remand.  *See Alexa J. M. v. Kijakazi*, No. 5:22-CV-243 (BKS/ML), 2023 WL 4467124, at *4 (N.D.N.Y. July 11, 2023) (remanding where the ALJ did not explain, "either expressly or implicitly," how the relevant evidence supports or undermines the medical opinion evidence).; *Brian C. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01292 (LEK/TWD), 2024 WL 1468869, at *8 (N.D.N.Y. Feb. 20, 2024), *rep't and rec. adopted*, 2024 WL 1069877 (N.D.N.Y. Mar. 12, 2024) (noting that meaningful judicial review is "frustrated" where "the Court is left to guess at the ALJ's reasoning." )

> **D.     The ALJ Failed to Adequately Consider the Consistency of Dr. Mendez's Opinion.**

The ALJ's vague analysis of the consistency factor also merits remand.  The courts in this Circuit have recognized that an ALJ should not consider the persuasiveness of each medical opinion "in a vacuum," but must adequately account for the consistency of the various opinions with each other.  *See Mallorie M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-891 (MAD/ATB), 2022 WL 19078137, at *12 (N.D.N.Y. December 22, 2022) (collecting cases), *rep't and rec. adopted*, 2023 WL 2563209 (N.D.N.Y. March 17, 2023); *Nancy C. v. Comm'r of Soc. Sec.*, No. 6:23-CV-00088, 2024 WL 1468871, *8 (N.D.N.Y. Jan. 25, 2024) ("Equally as crucial was the ALJ's failure to adequately consider the consistency of Ms. Schaffer and Dr. Poplock's opinion with the contemporaneous opinion of treating psychiatric nurse practitioner Kate Bolger, who similarly opined that plaintiff would have marked limitations in various capacities for work, including concentration and persistence"); *Ljena L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-08056, 2023 WL 2136391, *6 (S.D.N.Y. Feb. 21, 2023) (remanding where "the ALJ failed to acknowledge or address the extent to which the treating providers' opinions were consistent with each other. . .");

*Ingrid T.G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-5651 (GRJ), 2022 WL 683034, at *8 (S.D.N.Y. March 8, 2022) (". . . in finding the assessments of disabling pain and phobias unpersuasive, the ALJ was required to address and account for the fact that the treating providers were united in their belief that Plaintiff's symptom experience was plausible, pervasive, and preclusive of sustained work activity."); *see also Gary F. v. Comm'r of Soc. Sec.*, 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022) (finding ALJ erred when he "did not even acknowledge the substantial similarities between" two opinions).

Plaintiff notes the similarities between the opinions of Dr. Mendez and NP Mizgala on a number of functional limitations: the need to change position from sitting, standing, and walking at will (T. 960, 1016); the need for additional unscheduled breaks during the workday (T. 961, 1017); excessive time missed from work (T. 962, 1018); and difficulty maintaining attention and concentration for simple work tasks due to pain (T. 962, 1018). (Dkt. No. 10 at 22-23.)  Of course, "[s]olely because two opinions may be consistent with each other, does not mean they are consistent with the record as a whole . . . ." *See Malia Ann B. v. Comm'r of Soc. Sec.,* No. 5:21-CV-1362 (AMN/CFH)*,* 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *rep't and rec. adopted,* 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023).  Nevertheless, "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions." *Id*. (collecting cases).  The ALJ never discussed or even alluded to the similarities in the Mendez and Mizgala opinions, despite being the only opinions in the record based upon multiple in-person examinations of Plaintiff.  *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vt. July 14, 2020) (recognizing the "foundational nature" of direct observation of a patient, and "consistency with those observations" as a factor in evaluating the value of a medical opinion.").

22

The ALJ did consider the consistency of Dr. Mendez's opinion against the testimony of Dr. Winters and several mental health opinions, but this incomplete approach left a number of relevant matters unaddressed.  Dr. Winters, who did not submit a written opinion and received few follow-up questions, offered limited testimony regarding Plaintiff's ability to maintain attention and concentration in light of her physical impairments, and no testimony as to whether Plaintiff would need to regularly change positions from sitting, standing, and walking. (T. 1262-1265.)  The ALJ also compared Dr. Mendez's findings to mental status examinations that showed minimal interference with attention and concentration, but there is no indication that these psychiatric evaluations considered the impact of Plaintiff's physical pain on her ability to concentrate. (T. 681-682, 1711-1712.)  While such opinions may still be relevant to the ultimate disability determination, the ALJ failed to explain why they should be considered more persuasive than those that directly addressed the distractions created by Plaintiff's pain and other physical impairments.  *See Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with all medical and nonmedical evidence in a claim.")

It is well-established that ALJs are not required to "reconcile every conflicting shred of medical testimony."  *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).  However, it is equally true that an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review."  *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).  Because the ALJ's decision failed to build that accurate and logical bridge, this Court recommends remand to allow the ALJ to explain the supportability and consistency factors more

fully with regard to Dr. Mendez's opinion and any of the other relevant medical opinions, and to further develop the record as appropriate. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) ("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *rep't and rec. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

   **ACCORDINGLY**, it is

   **RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

   Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   February 9, 2026
         Binghamton, New York

                                        *Miroslav Lovric*
                                        Miroslav Lovric
                                        U.S. Magistrate Judge

24